PROSKAUER ROSE LLP
Sally L. Schneider (SS-0909)
1585 Broadway
New York, New York 10036
(212) 969-3803

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
TRUSTEES of the MASON TENDERS  :
DISTRICT COUNCIL WELFARE FUND,  :
PENSION FUND, ANNUITY FUND and  :
TRAINING PROGRAM FUND,  :  07 Civ. 3608 (VM)
  :
and  :
  :
MASON TENDERS DISTRICT COUNCIL OF  :
GREATER NEW YORK, by its Business Manager  :
Robert Bonanza,  :
  :
                                 Plaintiffs,  :  **COMPLAINT**
  :
      - against -  :
  :
METRO DEMOLITION CONTRACTING CORP.,  :
PHANTOM DEMOLITION CORP., WORLD CLASS  :
DEMOLITION CORPORATION, VINCENT  :
BORDONE and MAURIZIO BORDONE,  :
  :
                                 Defendants.  :
------------------------------------------------------------------X

      Plaintiffs, the Trustees of the Mason Tenders District Council Welfare Fund, Pension Fund, Annuity Fund and Training Program Fund (collectively, the "Funds") and the Mason Tenders District Council of Greater New York (the "Union"), by and through their attorneys, Proskauer Rose LLP, as and for their Complaint, respectfully allege as follows:

NATURE OF THE ACTION AND JURISDICTION

      1.     This is a civil action brought, *inter alia*, pursuant to sections 502(a)(3) and 515 of the Employee Retirement Income Security Act, as amended (29 U.S.C. §§ 1132(a)(3), 1145) (hereinafter referred to as "ERISA"), and section 301 of the Labor-Management Relations Act of

1947 (29 U.S.C. § 185) (hereinafter referred to as the "Taft-Hartley Act"), by the Trustees of the Funds and by the Union, through its Business Manager, for injunctive and other equitable relief and for breach of contract. This Complaint alleges that by failing, refusing or neglecting to comply with specific statutory and contractual obligations, defendants violated their collective bargaining agreements, the respective trust agreements of the Funds (the "Trusts"), the Taft-Hartley Act and ERISA.

2. Jurisdiction of this Court is invoked under the following statutes:

    (a) Section 502(e)(1) and (f) of ERISA (29 U.S.C. § 1132(e)(1) and (f));

    (b) Section 301 of the Taft-Hartley Act (29 U.S.C. § 185);

    (c) 28 U.S.C. § 1331 (federal question);

    (d) 28 U.S.C. § 1337 (civil actions arising under Act of Congress regulating commerce); and

    (e) principles of pendent and ancillary jurisdiction.

3. Venue properly lies in this district under section 502(e)(2) of ERISA (29 U.S.C. § 1132(e)(2)) and section 301 of the Taft-Hartley Act (29 U.S.C. § 185).

## PARTIES

4. Plaintiff Trustees are the trustees of a jointly-administered, multi-employer, labor-management trust funds established and maintained pursuant to various collective bargaining agreements in accordance with sections 302(c)(5) and (c)(6) of the Taft-Hartley Act (29 U.S.C. § 186(c)(5), (c)(6)). The Funds are employee benefit plans within the meaning of sections 3(1), 3(2), 3(3) and 502(d)(1) of ERISA (29 U.S.C. § §1002(1), (2), (3), and 1132(d)(1)), and multi-employer plans within the meaning of sections 3(37) and 515 of ERISA (29 U.S.C. §§ 1002(37) and 1145). The purpose of the Funds is to provide various fringe benefits to eligible employees on whose behalf employers contribute to the Funds pursuant to collective bargaining agreements between employers in the building and construction industry and the Union. The Mason Tenders District Council Welfare Fund, as the authorized agent, also collects and remits the required monetary contributions due to the New York State Laborers-Employers Cooperation and Education Trust Fund ("NYS-LECET"), the Greater New York Laborers-Employers Cooperation

and Education Trust Fund ("GNY-LECET"), the New York State Health and Safety Trust Fund ("NYSHST") and the Industry Advancement Fund ("IAF"). The Funds maintain their offices and are administered at 520 8th Avenue, New York, New York 10018, in the City, County and State of New York.

5. The Trustees of the Funds are fiduciaries within the meaning of sections 3(21) and 502 of ERISA (29 U.S.C. §§ 1002(21) and 1132), and bring this action in their fiduciary capacity.

6. Plaintiff Union is a labor organization within the meaning of section 301 of the Taft-Hartley Act (29 U.S.C. § 185), which represents employees in an industry affecting commerce as defined in section 501 of the Taft-Hartley Act (29 U.S.C. § 142) and section 3(4) of ERISA (29 U.S.C. § 1002(4)). The Union is the representative of its constituent locals, each local being a labor organization operating as a labor union with more than seven members within the City and State of New York. The Union maintains its offices and is administered at 520 8th Avenue, New York, New York 10018, in the City, County and State of New York.

7. Robert Bonanza is the Business Manager of the Union and brings this action for dues checkoffs and Political Action Committee ("PAC") contributions in his representative capacity pursuant to section 12 of the General Associations Law of the State of New York.

8. Defendant Metro Demolition Contracting Corp. ("Metro") has been a for-profit domestic corporation doing business in the City and State of New York as an employer within the meaning of sections 3(5) and 515 of ERISA (29 U.S.C. §§ 1002(5) and 1145), and has been an employer in an industry affecting commerce within the meaning of section 301 of the Taft-Hartley Act (29 U.S.C. § 185).

9. Metro has been a member of non-party Interior Demolition Contractors Association, Inc. (the "IDCA"), which is the bargaining agent for its members for the purpose of collective bargaining with the Union.

10. The IDCA executed collective bargaining agreements with the Union (the "Agreements"), with respect to which plaintiff Funds are third-party beneficiaries.

11. As a member of the IDCA, Metro agreed to comply with and to be bound by all of the provisions of the Agreements.

12. Defendant Phantom Demolition Corp. ("Phantom") has been a for-profit domestic corporation doing business in the City and State of New York as an employer within the meaning of sections 3(5) and 515 of ERISA (29 U.S.C. §§ 1002(5) and 1145), and has been an employer in

an industry affecting commerce within the meaning of section 301 of the Taft-Hartley Act (29 U.S.C. § 185).

13. Defendant World Class Demolition Corporation ("World Class") has been a for-profit domestic corporation doing business in the City and State of New York as an employer within the meaning of sections 3(5) and 515 of ERISA (29 U.S.C. §§ 1002(5) and 1145), and has been an employer in an industry affecting commerce within the meaning of section 301 of the Taft-Hartley Act (29 U.S.C. § 185).

14. Defendant Vincent Bordone is the President and sole shareholder of Metro.

15. Defendant Maurizio Bordone is an officer and shareholder of Phantom and the President and sole shareholder of defendant World Class.

16. Defendant Vincent Bordone is the father of defendant Maurizio Bordone.

<u>PRIOR ACTION AGAINST METRO AND PHANTOM</u>

17. In a prior action in this Court entitled *Trustees of the Mason Tenders District Council Welfare Fund, et al. v. Metro Demolition Contracting Corp. and Phantom Demolition Corp.*, 04 Civ. 6629 (RMB) (the "Prior Action"), plaintiffs sought to recover unpaid fringe benefit contributions, tier violation contributions, dues checkoffs and PAC contributions due and owing from Metro and Phantom, jointly and severally, as a single employer pursuant to the Agreements, the Trusts and ERISA.

18. On or about October 21, 2005, a Judgment on Consent (#05-2093) in the amount of $732,631.15 was entered in the Prior Action in favor of plaintiffs and against Metro (the "Metro Judgment").

19. On or about January 30, 2006, a Default Judgment (#06-0212) in the amount of $732,631.15 was entered in the Prior Action in favor of plaintiffs and against Phantom (the "Phantom Judgment", referred to collectively with the Metro Judgment as the "Judgments").

20. As a result of the Prior Action and the Judgments, defendants Metro and Phantom constitute a single employer pursuant to the Agreements, the Trusts and ERISA.

21. Neither Metro nor Phantom have satisfied the Judgments.

## AFFILIATION OF DEFENDANTS

22. Upon information and belief, defendant World Class is an alter ego of and/or single employer with defendants Phantom and Metro.

23. Defendants Metro, Phantom and World Class are affiliated business enterprises in that, *inter alia*, they have interrelated operations, common ownership and management, shared assets, equipment, payroll, employees, and/or centralized control of labor relations, and they all perform work within the trade and geographic jurisdictions of the Union.

24. By the terms of the Agreements, any entities which perform bargaining unit work and in which Metro and/or Phantom, or any of their owners or principals, have an ownership interest or a direct or indirect controlling interest, are bound by the Agreements. The Agreements provide:

> If an Employer covered by this Agreement or any of such Employer's owners or principals forms or acquires by purchase, merger or otherwise, a direct or indirect controlling interest, whether by ownership, stock, equity or management, in another company performing bargaining unit work within this jurisdiction, this Agreement shall cover such other operation and such other bargaining unit employees shall be considered an accretion to the bargaining unit * * * and the Employer and such other company shall be jointly and severally liable for each other's obligations under this Agreement. A principal shall be defined as an individual with a controlling interest in the management of the Employer.

25. Defendants Metro and Phantom and/or one or more of their respective owners or principals has an ownership and/or a direct or indirect controlling interest in defendant World Class.

26. Defendant World Class and/or one or more of its owners or principals has an ownership and/or a direct or indirect controlling interest in defendant Phantom.

27. Defendants Metro, Phantom and World Class perform bargaining unit work within the jurisdiction of the Agreements.

28. Defendants Metro, Phantom and World Class are, therefore, all parties to the Agreements, bound by their terms, and are jointly and severally liable for each other's obligations under the Agreements.

29. Further, defendant World Class aided defendants Metro and Phantom in evading their contractual obligations to plaintiffs by performing work within the trade and jurisdiction of

the Union without conforming to or complying with the terms of the Agreements. Accordingly, defendant World Class is an alter ego or mere instrumentality of defendants Metro and Phantom.

30. Defendants Vincent Bordone and Maurizio Bordone have, at all times, been vested with and maintain authority and control over the payment of the required monetary contributions owed under the Agreements.

31. Defendants Vincent Bordone and Maurizio Bordone have aided defendants Metro, Phantom and World Class in evading their contractual obligations to plaintiffs by controlling the assets, finances and business of defendants Metro, Phantom and World Class without conforming to or complying with the terms of the Agreements.

## THE AGREEMENTS AND TRUSTS

32. Pursuant to the terms of the Agreements and Trusts, defendants Metro, Phantom and World Class are required, *inter alia*, to:

    (a) pay monetary contributions to the Funds and to the authorized agent of the NYS-LECET, GNY-LECET, NYSHST and IAF (the "fringe benefit contributions"), at the rates and times set forth in the Agreements, for all work performed by defendants' employees within the trade and geographical jurisdictions of the Union;

    (b) submit contribution reports to the Funds;

    (c) in the event defendants fail to timely pay fringe benefit contributions, defendants are obligated to pay interest from the date such delinquent contributions were due until the date of payment, and to pay all costs and attorneys' fees incurred by the Funds in the recovery thereof;

    (d) deduct and remit Union dues checkoffs and PAC contributions (at the rates per hour specified by the Union), from the wages paid to employees who authorize said deductions in writing, for all work performed by defendants' employees within the trade and geographical jurisdictions of the Union;

    (e) permit and cooperate with the Funds and/or their designated representatives in the conduct of audits of all of defendants' books and records including, without limitation, all payroll sheets, computer payroll printouts, daily time records, job location records, cash disbursement journals, State tax forms WRS-2, WT4A and 4B or NYS 45 (NY), and WR 30 (NJ), Federal tax forms W2, W3, 940, 941, 1096, 1099, 1120s/1120S and 1040 Schedule C, New York and New Jersey employment records and reports, insurance company reports, supporting checks, general ledgers, vouchers, verification

6

        of work outside the trade and/or geographical jurisdiction of the Union, evidence of unemployment insurance contributions, payroll tax deductions, disability insurance premiums, certification of workers compensation coverage, and any other items concerning payroll(s), as well as the same records of any affiliate, subsidiary, alter ego, joint venture, successor or other related company of defendants;

(f)      pay the costs of the audits if defendants are substantially delinquent in the payment of fringe benefit contributions to the Funds. "Substantially delinquent" is defined as any delinquency in the payment of fringe benefit contributions in excess of 10% of the fringe benefit contributions paid to the Funds during the period covered by the audit;

(g)      post and maintain bonds to guarantee payment of all fringe benefit contributions and remittance of all dues checkoffs and PAC contributions that become due and owing; and

(h)      in the event defendants engage in a substantial violation of the ratio of Tier B and Tier A Interior Demolition Workers during a quarter, defendants are required to contribute to the Funds the total differential in wages and benefits that defendants should have paid but did not pay.

REMEDIES FOR BREACH OF OBLIGATIONS TO THE FUNDS

33.      Pursuant to the terms of the Agreements, the Trusts and section 515 of ERISA (29 U.S.C. § 1145), employers are required to pay fringe benefit contributions to plaintiff Funds in accordance with the terms and conditions of the Agreements.

34.      Failure to make such payment or timely payment constitutes a violation of the Agreements, the Trusts and section 515 of ERISA (29 U.S.C. § 1145).

35.      The Agreements, the Trusts and section 502 of ERISA (29 U.S.C. § 1132) all provide that, upon a finding of an employer violation as set forth above, plaintiff Funds shall be awarded the unpaid fringe benefit contributions, plus interest and liquidated damages on the unpaid and/or untimely paid fringe benefit contributions (both computed at the rate prescribed under section 6621 of Title 26 of the United States Code (26 U.S.C. § 6621)), together with reasonable attorneys' fees and costs of the action, and such other legal or equitable relief as the court deems appropriate.

<u>AS AND FOR A FIRST CLAIM FOR RELIEF</u>
(DEMAND FOR AN ORDER DIRECTING METRO,
PHANTOM AND WORLD CLASS TO PERMIT
AN AUDIT AND PAY THE COSTS THEREOF)

36.     Plaintiff Funds repeat and reallege each and every allegation contained in paragraphs 1 through 35 of this Complaint, as if fully set forth herein.

37.     Pursuant to the terms of the Agreements and Trusts, as set forth in paragraph 32(e) above, defendants Metro, Phantom and World Class are required to permit and cooperate with the Funds and/or their designated representatives in the conduct of audits of their books and records.

38.     As a result of defendants' failure to make payment, the Funds have reason to believe that fringe benefit contributions are due and owing.

39.     Accordingly, pursuant to the Agreements and the Trusts, the Funds demand an Order directing defendants Metro, Phantom and World Class to permit and cooperate in the conduct of an audit of their books and records for the period January 1, 2005 through the date of judgment, and to pay the costs thereof if such audit confirms that defendants are is substantially delinquent in the payment of fringe benefit contributions for such period.

<u>AS AND FOR A SECOND CLAIM FOR RELIEF</u>
(CLAIM AGAINST METRO, PHANTOM
AND WORLD CLASS FOR
FRINGE BENEFIT CONTRIBUTIONS)

40.     Plaintiff Funds repeat and reallege each and every allegation contained in paragraphs 1 through 39 of this Complaint, as if fully set forth herein.

41.     Upon information and belief, as a result of work performed pursuant to the Agreements by employees of defendants Metro, Phantom and World Class, fringe benefit contributions became due and owing from defendants in an amount to be determined by the audit of defendants' books and records for the period January 1, 2005 to the date of judgment.

42.     No fringe benefit contributions contractually due for the aforesaid period have been paid by defendants.  The Funds have therefore been damaged in an amount to be determined by the aforesaid audit.

43.     The failure of defendants Metro, Phantom and World Class to make such payment or timely payment constitutes a violation of the Agreements, the Trusts and section 515 of ERISA

(29 U.S.C. § 1145).

44. Accordingly, pursuant to the Agreements, the Trusts, and section 502 of ERISA (29 U.S.C. § 1132), defendants Metro, Phantom and World Class are jointly and severally liable to the Funds for: (a) all fringe benefit contributions found due and owing pursuant to an audit of defendants' books and records for the period January 1, 2005 to the date of judgment; and (b) the interest and liquidated damages on the unpaid and untimely paid fringe benefit contributions pursuant to the Agreements and the Trusts.

AS AND FOR A THIRD CLAIM FOR RELIEF
(CLAIM AGAINST METRO, PHANTOM
AND WORLD CLASS FOR DUES
CHECKOFFS AND PAC CONTRIBUTIONS)

45. Plaintiff Union repeats and realleges each and every allegation contained in paragraphs 1 through 44 of this Complaint, as if fully set forth herein.

46. Upon information and belief, as a result of work performed pursuant to the Agreements by employees of defendants Metro, Phantom and World Class, dues checkoffs and PAC contributions became due and owing from defendants in an amount to be determined by the audit of defendants' books and records for the period January 1, 2005 to the date of judgment.

47. No dues checkoffs or PAC contributions contractually due for the aforesaid period have been remitted by defendants. The Union has therefore been damaged in an amount to be determined by the aforesaid audit.

48. The failure of defendants Metro, Phantom and World Class to remit such deductions constitutes a violation of the Agreements.

49. Accordingly, pursuant to the Agreements and section 301 of the Taft-Hartley Act (29 U.S.C. § 185), defendants Metro, Phantom and World Class are jointly and severally liable to the Union for: (a) all unremitted dues checkoffs and PAC contributions found due and owing pursuant to the aforesaid audit of defendants' books and records for the period January 1, 2005 to the date of judgment; and (b) interest.

AS AND FOR A FOURTH CLAIM FOR RELIEF
(CLAIM AGAINST WORLD CLASS FOR
OBLIGATIONS OWED BY METRO AND PHANTOM)

50. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 49 of this Complaint, as if fully set forth herein.

51. Upon information and belief, both before and after entry of the Judgments, defendant World Class aided Metro and Phantom in evading their obligations to plaintiffs.

52. Upon information and belief, both before and after entry of the Judgments, defendant World Class received assets and/or property of Metro and Phantom without adequate consideration.

53. Upon information and belief, defendant World Class has conducted the same business of Metro and Phantom at the same location, servicing the same customers, and utilizing the same employees and equipment, with the intent to continue performing work within the trade and jurisdiction of the Union without conforming to or complying with the terms of the Agreements and to assist and enable Metro and Phantom to evade their obligations to plaintiffs.

54. Accordingly, defendant World Class is liable to plaintiffs for all amounts due pursuant to the Judgments.

AS AND FOR A FIFTH CLAIM FOR RELIEF
(CLAIM AGAINST VINCENT BORDONE
AND MAURIZIO BORDONE)

55. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 54 of this Complaint, as if fully set forth herein.

56. Upon information and belief, at all times material hereto, defendants Vincent Bordone and Maurizio Bordone have treated defendants Metro, Phantom and World Class as a single enterprise.

57. Upon information and belief, at all times material hereto, defendants Vincent Bordone and Maurizio Bordone have dominated and controlled the assets, finances and business of defendants Metro, Phantom and World Class.

58. Upon information and belief, at all times material hereto, when defendants Vincent Bordone, Maurizio Bordone, Phantom, World Class and/or other Bordone family members

required funds, defendant Vincent Bordone took funds from defendant Metro without charging interest, without requiring or obtaining collateral or other security, and without written loan documents.

59. Upon information and belief, at all times material hereto, when defendants Phantom and World Class required trucks and other equipment to operate their businesses, defendant Vincent Bordone took trucks and other equipment from defendant Metro and transferred them to defendants Phantom and World Class without adequate consideration.

60. Upon information and belief, at all times material hereto, when defendant World Class required trucks and other equipment to operate its business, defendant Maurizio Bordone took trucks and other equipment from defendant Phantom and transferred them to defendant World Class without adequate consideration.

61. Upon information and belief, at all times material hereto, when defendants Phantom and/or World Class required personnel to perform work, defendants Vincent Bordone and Maurizio Bordone ordered and/or directed employees of Metro and/or Phantom to perform work for World Class but continued to maintain such employees on the payroll records of Metro and/or Phantom and to pay such employees with funds of Metro and/or Phantom without receiving adequate consideration from World Class.

62. Upon information and belief, both before and after entry of the Judgments, defendants Vincent Bordone and Maurizio Bordone transferred assets of Metro and Phantom to World Class without adequate consideration.

63. Upon information and belief, both before and after entry of the Judgments, defendants Vincent Bordone and Maurizio Bordone transferred assets of Metro and Phantom to World Class with the intent to continue performing work within the trade and jurisdiction of the Union without conforming to or complying with the terms of the Agreements and to assist and enable Metro and Phantom to evade their obligations to plaintiffs.

64. Upon information and belief, none of the foregoing transactions conform with generally accepted corporate business practices.

65. As a result of the foregoing, defendants Vincent Bordone and Maurizio Bordone aided defendants Metro and Phantom in evading their financial, contractual and statutory obligations to plaintiffs.

66. Accordingly, as a result of their domination and control of the assets, finances and

business of Metro, Phantom and World Class, defendants Vincent Bordone and Maurizio Bordone are liable to the plaintiffs for all amounts due from defendants Metro, Phantom and World Class.

<u>AS AND FOR A SIXTH CLAIM FOR RELIEF</u>
(FUNDS' CLAIM FOR INJUNCTIVE
RELIEF AGAINST DEFENDANTS)

67. Plaintiff Funds repeat and reallege each and every allegation contained in paragraphs 1 through 66 of this Complaint, as if fully set forth herein.

68. As set forth above, defendants have breached, and are currently in breach of their obligations under the Agreements and the Trusts, and have violated section 301 of the Taft-Hartley Act (29 U.S.C. § 185) and section 515 of ERISA (29 U.S.C. § 1145).

69. Defendants' prior conduct demonstrates a significant likelihood that they will continue to breach the aforementioned contractual and statutory provisions.

70. Plaintiff Funds will suffer immediate and irreparable injury unless defendants, their officers, agents, servants and employees are enjoined from failing, refusing or neglecting to comply with all of their obligations, pay and/or submit all required fringe benefit contributions and/or reports to the Funds, permit and cooperate in the conduct of audits, pay the costs of the audits, remit all dues checkoffs and PAC contributions, and pay all amounts determined by the audits to be due and owing and all amounts set forth in the Judgments, for so long as defendants remain obligated to do so pursuant to the Agreements, the Trusts and ERISA.

71. Plaintiff Funds have no adequate remedy at law to insure that defendants will comply with their continuing obligations under the Agreements, the Trusts and ERISA.

72. Accordingly, plaintiff Funds request that this Court issue an injunction preliminarily and permanently enjoining defendants, their officers, agents, servants, employees and all persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise from violating the terms of the Agreements and the Trusts and requiring them to timely pay and/or submit all required fringe benefit contributions and/or reports to the Funds, permit and cooperate in the conduct of audits, pay the costs of the audits, remit all dues checkoffs and PAC contributions, and pay all amounts determined by the audits to be due and owing and all amounts set forth in the Judgments, for so long as defendants remain obligated to do so pursuant to the Agreements, the Trusts and ERISA.

WHEREFORE, plaintiffs demand judgment against defendants, jointly and severally:

(a) against defendants, jointly and severally, directing defendants to permit and cooperate in the conduct of an audit of the books and records of Metro, Phantom and World Class for the period January 1, 2005 to the date of judgment;

(b) against defendants, jointly and severally, for payment of all fringe benefits contributions found due and owing to plaintiff Funds pursuant to an audit of the books and records of Metro, Phantom and World Class for the period January 1, 2005 to the date of judgment, and which become due during the pendency of this action;

(c) against defendants, jointly and severally, for accrued prejudgment interest on all fringe benefit contributions due pursuant to § 502(g)(2) of ERISA;

(d) against defendants, jointly and severally, for liquidated damages on all fringe benefit contributions due pursuant to § 502(g)(2) of ERISA;

(e) against defendants, jointly and severally, for reasonable attorneys' fees and costs pursuant to § 502(g)(2) of ERISA;

(f) against defendants, jointly and severally, for payment of the costs of the audit of the books and records of Metro, Phantom and World Class for the period January 1, 2005 to the date of judgment if such audit confirms that defendants are substantially delinquent in the payment of fringe benefit contributions for such period, plus the reasonable costs and attorneys' fees incurred by the Funds, pursuant to the Agreements;

(g) against defendants, jointly and severally, for remittance of all dues checkoffs and PAC contributions found due and owing to plaintiff Union pursuant to an audit of the books and records of Metro, Phantom and World Class for the period January 1, 2005 to the date of judgment, and which become due during the pendency of this action, with interest;

(h) against defendants World Class, Vincent Bordone and Maurizio Bordone, jointly and severally, for payment of the Judgments;

(i) for an Order preliminarily and permanently enjoining defendants, jointly and severally, their officers, agents, servants, employees and all persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise from violating the terms of the Agreements and the Trusts and requiring them to timely pay and/or submit all required fringe benefit contributions and/or reports to the Funds, permit and cooperate in the conduct of audits, pay the costs of the audits, remit dues checkoffs and PAC contributions, and pay all amounts determined by

   the audits to be due and owing and all amounts set forth in the Judgments, for so long as defendants remain obligated to do so in accordance with ERISA, the Agreements and the Trusts; and

(j)  for such other and further relief as the Court deems just and proper.

Dated: New York, New York
   May 4, 2007

              PROSKAUER ROSE LLP
              Attorneys for Plaintiffs

              By: /s/ Sally L. Schneider
                Sally L. Schneider (SS-0909)

              1585 Broadway
              New York, New York 10036
              (212) 969-3803

              sschneider@proskauer.com