remittance reports for all months in the manner and at the times required under the Agreement; ii) has paid at least 75% of the full amount of fringe benefit contributions, dues and MTDC PAC contributions owed as suggested by the reconciled reports for that quarter (as defined in Schedule C); and iii) is not delinquent in the payment of fringe benefit contributions, dues or MTDC PAC contributions for any other unaudited period (as compared to the reconciled reports) nor substantially delinquent in such payments for any audited period as elsewhere defined in the Agreement.

c) The Association and the Union shall establish a committee to confer regarding fringe benefit delinquencies arising from non-payment of contractors on specific jobs (the "NP Committee"). Upon request of either party the NP Committee shall meet and, by unanimous vote, may determine to require the application of Non-Payment Terms on a specific job. The Non-Payment Terms shall be that the Mason Tenders Master Independent Collective Bargaining Agreement then in effect (the "Master Independent Agreement") shall apply on the site to any Employer thereafter commencing work at the site, including the provisions therein regarding personal liability. Copies of the current Master Independent Agreement have been provided to the Association, and are available on request.

Section 22.-

a) The books and records of the Employer shall be made available at all reasonable times for inspection and audit by the accountants or other representatives of the Trust Funds set forth in this Article of the Agreement, including, without limitation, all payroll sheets, W-2 forms, New York State Employment Reports, Insurance Company Reports and supporting checks, ledgers, general ledger, cash disbursement ledger, vouchers, 1099 forms, evidence of unemployment insurance contributions, payroll tax deductions, disability insurance premiums, certification of workers compensation coverage, and any other items concerning payroll(s). In addition, the aforementioned books and records of any affiliate, subsidiary, alter ego, joint venture, successor or related company of the Employer shall also be made available at all reasonable times for inspection and audit by the accountants of the Trust Funds set forth in this Article of the Agreement. The Employer shall retain, for a minimum period of six years, payroll and related records necessary for the conduct of a proper audit in order that a duly designated representative of the Trustees may make periodic review to confirm that contributions owed pursuant to this Agreement are paid in full.

b) In the event, after the Trustees have made a reasonable request, the Employer fails to produce its books and records necessary for a proper audit, the Trustees, in their sole discretion, may determine that the Employer's monthly hours subject to contributions for each month of the requested audit period are the highest number of employee hours for any month during the twelve months audited, or during the last twelve months for which reports were filed, whichever monthly number of hours is greater. Such determination by the Trustees shall constitute presumptive evidence of delinquency. Prior to making such determination, the Trustees shall mail a final seven day written notice to the Employer advising him that such determination shall be made if the Employer does not schedule a prompt audit. Nothing herein shall mean that the Funds relinquish their right to commence legal proceedings to compel an examination of the Employer's books and records for audit.

c) If after an audit of its books and records the Employer is found to be substantially delinquent, as defined herein, in the payment of fringe benefit contributions to the Trust Funds set forth in this article of the Agreement, the Employer shall bear the actual cost of the audit, unless unreasonable. Substantially delinquent for purposes of this Section is defined as any deficiency in the payment of fringe benefit contributions to the Trust Funds set forth in this Article of the Agreement in excess of ten percent (10%) of the fringe benefit contributions paid to the Trust Funds set forth in this Article of the Agreement during the period that is subject to the audit. In the event the Trust Funds set forth in this Article of the agreement bring an action to recover the actual costs of audit, the Employer shall be obligated to pay the reasonable costs and attorneys' fees incurred in bringing said action.

d) In the event the Employer fails to produce the books and records necessary for an audit as set forth in subsection 20(a) of this Article of the Agreement, the Employer agrees to pay a penalty of $400.00. In the event the Trust Funds set forth in this Article of the Agreement bring an action to obtain an audit of the Employer's books and records, the Employer shall be obligated to pay the reasonable costs and attorneys' fees incurred in bringing said action.

e) If after an audit of its books and records the Employer is found to be delinquent in the payment of fringe benefit contributions to the Trust Funds set forth in this Article of the Agreement then the Employer shall pay, in addition to the delinquent fringe benefit contributions, interest on the unpaid amounts from the date due until the date of payment at the rate prescribed under section 6621 of Title 26 of the United States Code. In the event the Trust Funds set forth in this Article of the Agreement bring an action to recover the interest on delinquent fringe benefit contributions, the Employer shall be obligated to pay the reasonable costs and attorneys' fees incurred in bringing said action.

f) In the event that formal proceedings are instituted before a court of competent jurisdiction by the Trustees of the Trust Funds set forth in this Article of the Agreement to collect delinquent contributions to such Fund, and if such court renders a judgment in favor of such Fund, the Employer shall pay to such Fund, in accordance with the judgment of the court, and in lieu of any other liquidated damages, costs, attorney's fees and/or interest, the following:

(A) the unpaid contributions.

(B) interest on unpaid contributions determined by using the rate prescribed under section 6621 of Title 26 of the United States Code.

(C) interest on the unpaid contributions as and for liquidated damages.

(D) reasonable attorneys' fees and costs of the action.

(E) such other legal or equitable relief as the court deems appropriate.

(g) The Employer hereby agrees that in the event any payment to the Union or to the Trust Funds set forth in this Article of the Agreement by check or other negotiable instrument results in the check or negotiable instrument being returned without payment after being duly presented,

20

the Employer shall be liable for additional damages in the amount $250.00 to cover such additional costs, charge and expenses. Nothing herein is intended, nor shall be interpreted, to mean that the Trust Funds set forth in this Article of the Agreement or Union waive any other liquidated damages.

## ARTICLE VII

Section 1.-

Except as expressly limited by other provisions of this Agreement, each Employer retains the sole right: to manage the affairs of its business and to direct its workforce; to hire, promote, transfer, or layoff, or to discipline or discharge; to promulgate reasonable work rules not inconsistent with this Agreement; to select foremen; to assign and schedule work; to select employees to be laid off, except as limited by Article IX, Section 1 (h); to assign and change the work, duties and job functions of specific employees; to determine the qualifications and competency of employees; to determine the number of hours to be worked; to discontinue or close down, temporarily or permanently, in whole or in part, the operations of its business or to sell part or all of such business or operations; to determine the number of employees assigned to any particular job or task; and to carry out the ordinary and customary functions of management. No rules, customs, or practices which limit or restrict productivity, efficiency or the individual and/or joint working efforts of employees shall be permitted or observed. The Employer may utilize any methods or techniques of operation.

Section 2.-

There shall be no limitation or restriction by the Union upon the Employer's choice of materials or design, nor, regardless of source or location, upon the selection or use of equipment, machinery, packaging, materials, tools, or devices, except as restricted by otherwise applicable contractual or legal safety constraints.

Section 3.-

The use of technology, equipment, machinery, tools and/or labor saving devices and methods of performing work may be initiated by the Employer from time-to-time during the term of this Agreement. If there is any disagreement between an Employer and a Union concerning the use or implementation of any such device or method of work, the implementation shall proceed as directed by the Employer, and the Union shall have the right to grieve and/or arbitrate the dispute as set forth in Article XI of this Agreement, except that the Employer shall not implement any disputed changes affecting the employees' hygiene, health or safety prior to a final determination by the Joint Arbitration Board or Arbitrator pursuant to Article XI.

## ARTICLE VIII

Section 1.-

The Employer shall supply all necessary tools on the job required in performing the work covered by this Agreement. The Employer shall supply as safe and adequate a place for Interior Demolition Workers to store their outerwear and clothing as is reasonably practicable.

Section 2.-

Interior Demolition Workers on the job shall wear in plain sight, numbered badges (not to exceed one and one-half inches (1 1/2") in diameter) when requested to so by the Employer; such badges shall be furnished without charge by the Employer.

Section 3.-

The Employer, Interior Demolition Workers or the agents of either shall not accept or give directly or indirectly, any rebate on wages, or give or accept gratuities, or give anything of value or extend any favor to any person for the purpose of effecting any change in rate of wages. The Employer or its representatives shall not be permitted to give any advance in wages to Interior Demolition Workers, nor shall they be permitted to lend money to Interior Demolition Workers.

Section 4.-

a) In buildings thirteen stories in height or over, an elevator shall be provided to carry Interior Demolition Workers to and from their work during regular hours of employment after the work has reached the twelfth floor. Consideration shall be given to Interior Demolition Workers working on higher stories if elevator service is not maintained, and a reasonable time shall be allowed to and from work.

b) In order to establish a maximum weight of material and the barrow to be handled by one laborer, it is agreed that the combined weights of the materials and the barrow shall not exceed three hundred pounds.

Section 5.-

No provision of this Agreement shall supersede any Municipal, State or Federal law which imposes more stringent requirements as to wages, hours of work, or as to safety, sanitary, or general working conditions than are imposed by this Agreement.

## ARTICLE IX

Section 1.-

a) The Union shall designate one working Skilled Interior Demolition Worker who shall be referred from the out-of-work list as a Shop Steward for each shift and who shall be the second person on the job (after the Foreman), and the Union shall notify the Employer in writing of the identity of the designated Shop Steward prior to that person's assumption of the duties as Shop Steward. Where there are overlapping shifts, each shift shall have its own Shop Steward and each Shop Steward shall be responsible for said Shop Steward's own shift only. Each Shop Steward shall perform the duties as Shop Steward with the least possible inconvenience to the Employer. The Shop Steward is to work as an Interior Demolition Worker and shall not use the position as Shop Steward to avoid performance of duties as a working Interior Demolition Worker. Such designated Shop Stewards shall not exercise any supervisory functions. There will be no non-working Shop Stewards. There will be only one Shop Steward for each shift.

b) The Shop Steward shall perform the duties as Shop Steward at the beginning and end of each shift, except in the event of an emergency that places an employee's health or safety at risk. At both the beginning and the end of each shift, the Shop Steward's time to perform the

non-emergency duties shall not exceed five minutes per each five Interior Demolition Workers on the shift, provided further that as soon as the Shop Steward has completed said duties, the Shop Steward shall immediately begin to perform duties as a working Interior Demolition Worker. In addition to performing work as an Interior Demolition Worker, the Shop Steward shall have the right to receive, but not promote, complaints or grievances and to discuss and assist in the adjustment of the same with the Interior Demolition Worker's appropriate supervisor. Each Shop Steward shall be concerned with the employees of the Shop Steward's shift and Employer covered by this Agreement and, if applicable, subcontractor, and not with the employees of any other shift or Employer or with any employees not covered by this Agreement. The Employer will not discriminate against the Shop Steward in the proper performance of the Shop Steward's union duties, subject to the provisions of the Agreement.

c) When an Employer has multiple, non-contiguous work locations on the site, the Employer may elect to have the Union appoint additional working Shop Stewards to provide independent coverage of one or more such locations, or allow the existing Shop Steward reasonable time away from said Shop Steward's work duties to service such other locations with approval from the Shop Steward's supervisor, which approval will not be unreasonably withheld.

d) Shop Stewards shall not have the right to determine when overtime shall be worked or who shall work overtime.

e) The Employer shall not recognize any Union representative or Shop Steward of whom it has not been informed in writing.

f) Shop Stewards shall be governed by the same rules regulating work and access to job sites as other employees.

g) Shop Stewards may not stop working or leave their work areas to investigate grievances without authorization from their supervisor. The investigation and presentation of grievances shall be transacted in as short a time as possible and shall not interfere with the operations of the Employer.

h) If the Shop Steward is discharged or rejected, the Shop Steward shall at once be replaced by the Union. The termination of said Shop Steward may be grieved in accordance with the provisions of Article XI, and if the Shop Steward is found to have been improperly terminated, the Shop Steward shall be paid for all time lost for the duration of the job for which the Shop Steward was appointed, not to exceed thirty days, and shall be reinstated, if appropriate. The Shop Steward is to work up to the completion of the job and shall be the second to the last Interior Demolition Worker to be laid off.

Section 2.-
The selection of Foremen and the number of Foremen required shall be the responsibility of the Employer. Foremen shall be designated as working foremen at the discretion of the Employer. Foremen shall take their direction from the Employer's supervisor, and employees shall take their direction from the Foremen or any authorized supervisor. There shall be no restriction on the right of a supervisor to perform work covered by this agreement where such

work is (i) of an incidental nature, (ii) necessary to the safety of the work or the employees, (iii) performed in connection with the instruction or training of unit employees, or (iv) required due to an emergency or circumstances beyond the employer's control.

Section 3.-

Shop Stewards and Foremen shall not be designated, selected or required for any Interior Demolition Worker performing safety watch duty.

Section 4.-

The Business Agent, Business Manager or other designated representative of the Union shall have the right to visit and go upon the Employer's jobs during working hours for the sole purpose of administering this Agreement, provided that the Union representative (a) shall report to and advise the Employer's supervisor of his visit upon his arrival at the job site and (b) shall not unreasonably interfere with the Employer's operations. The Employer shall not unreasonably interfere with such Union representatives in the proper performance of their duties.

## ARTICLE X

Section 1.-

a) There shall be no strikes, sympathy strikes, walkouts, picketing, work stoppages, slowdowns, boycotts or other disruptive activity of a similar nature at a job site of, or otherwise directed at or affecting any Employer during the term of this Agreement, and there shall be no lockouts by any Employer, except:

(i) Where the Employer, at any job site, contracts or subcontracts work covered by this Agreement to any other person, firm, partnership, corporation or joint venture that is not bound or does not become bound by an Agreement with the Union, provided that the Union has first given twenty-four hours notice to the Employer.

(ii) If, within five (5) business days of issuance, an Employer fails to comply with an arbitration award, court order or judgment, or National Labor Relations Board order or decision, that the Employer is in arrears on monies payable to employees or any of the Fringe Benefit Funds as required by Article VI of this Agreement, the Union shall be permitted to withdraw labor from such Employer and/or picket until the Employer complies with the award, order or decision.

(iii) If, after the provision of notices and opportunities to respond as provided below, the Employer is substantially delinquent in the payment of fringe benefit, dues check off, and/or MTDC PAC contributions. Thereafter, the Union shall be permitted to withdraw labor from such Employer and/or picket until the Employer pays the full deficiency.

For purposes of this subsection an Employer shall be substantially delinquent for a period that has not been the subject of a final audit if during any such period covering three or more months, the Employer has failed to pay at least seventy five percent (75%) of the full amount of fringe benefit, dues check off, and/or MTDC PAC contributions due under the reconciled reports (as defined in Schedule C hereto), and within ten calendar days of being so notified, fails to pay

at least such amounts as are sufficient to bring the Employer to the position of having paid seventy five percent (75%) of the fringe benefit, dues check off and MTDC PAC contributions owed for the months at issue. (The notices required to be provided in this paragraph and paragraph a)(iv) below shall be made by certified mail return receipt requested, with a copy forwarded to the representative of the Association.)

For purposes of this subsection an Employer shall also be substantially delinquent if ten calendar days have elapsed since the Employer's receipt of a final audit determining that the Employer has a deficiency in wages, fringe benefit, dues check off, and/or MTDC PAC contributions for the audited period that exceeds ten percent (10%) of the wages, dues obligations, fringe benefit contributions and/or MTDC PAC remittances paid during the period, and the Employer has not either (A) paid the deficiency or (B) provided an opinion letter from its own certified public accountant that another amount or no amount is due and posted a bond in the amount of either twice the amount determined by the Employer's accountant or in the amount of the final audit, whichever is less.

(iv) If the Employer has failed to post and maintain a bond as required under this Agreement, has unreasonably or repeatedly refused to allow the Fund's auditors to conduct a payroll audit as provided under this Agreement, or is notified of its failure to submit remittance reports covering two or more months, as required under this Agreement, and fails to submit such reports within ten calendar days of the notice.

(v) If the Union concludes that the Mason Tenders on any job have not been paid, or are being paid less than the rate of wages prescribed in this Agreement,

b) (i) It shall not be a violation of this Agreement for an employee to refuse to cross or work behind a lawful primary picket line established by another union, but it shall be a violation of this Agreement and cause for discharge or disciplinary action for an employee to refuse to cross or work behind any jurisdictional or recognitional picket line by another union concerning work covered by this Agreement or any picket line in violation of this Agreement.

(ii) It shall not be a violation of this Agreement for the Union to establish a lawful primary recognitional picket concerning work within the charter of the Union but not covered by Article IV, Section 1 of this Agreement, but if an employee refuses to cross or work behind any such recognitional picket line as the Employer deems appropriate, and the Union shall direct all employees covered by this Agreement to cross and work behind any such picket line.

c) The Union shall not be responsible for any unauthorized strike or its results as long as the Union complies with its obligations set forth in Section 2 of this Article.

d) The parties to this Agreement agree that no damages of any kind or nature shall be awarded or allowed against the Union and its affiliated locals, or any officer or member thereof by reason of the withdrawal of men from a job pursuant to subsections a(i), (ii), (iii), (iv) or (v) of this Section 1.

Section 2.-

The Union shall take the following steps to obtain compliance with this Article. In the event of a strike, sympathy strike, walkout, picketing, work stoppage, slow-down, boycott or other disruptive activity at or affecting a job site of, or otherwise directed at or affecting, any Employer during the term of this Agreement, not authorized by subparagraphs a (i), (ii), (iii), (iv) or (v) of Section 1 of this Article: the Union will immediately (1) order each employee to return to work or otherwise cease violating the Agreement and (2) post notices and otherwise advise the employees that the strike or stoppage is unauthorized and in violation of the Agreement.

Section 3.-

The Employers shall have the right to discharge or discipline any employee who violates the provisions of this Article. Such discharge or discipline shall be subject to the grievance-arbitration procedure but limited only to the question of fact as to whether or not such employee did engage in an activity in violation of this Article. If the fact of the employee's violation is established, the penalty imposed by the Employer shall be confirmed and shall not be subject to review or modification by the arbitrator.

Section 4.-

In the event of a violation of Section 1 a) of this Article, but excluding action(s) claimed by the Union to be taken under subsection (i),(ii), (iii) or (iv) thereof, the Employer may bring an action in federal court against the Union for damages and/or injunctive relief. However, it is understood that no damages shall be awarded for any sympathy strike.

Section 5.

In the event after the withdrawal of labor under the preceding Article X, Section 1(a), the Union permanently or provisionally discontinues such withdrawal to allow work to resume on the same work day/shift, it shall be an imputed term of any such return to work (applicable unless otherwise agreed in writing by the parties at the time), that employees shall be paid for all time lost as a result of the withdrawal of labor.

## ARTICLE XI

Section 1.

a) This Agreement is intended to provide close cooperation between management and labor, and to facilitate the economically efficient completion of work pursuant to this Agreement economically, efficiently, continuously and without interruption, delays or work stoppages.

b) The Employers, the Unions and employees collectively and individually realize the importance to all parties to maintain continuous and uninterrupted performance of work pursuant to this Agreement, and agree to resolve disputes in accordance with the arbitration provisions set forth in this Article.

Section 2.

Any question, complaint, dispute or grievance arising out of and during the term of this Agreement involving its interpretation and application - other than trade jurisdictional disputes (which shall be resolved through the New York Plan for the Settlement of Jurisdictional

Disputes); disputes related to the Union's compliance with Article X, Section 1(a)(i)(ii)(iii)or(iv) of this Agreement; claims, disputes and demands arising out of the Employer's fringe benefit contribution obligations, dues obligations and/or MTDC PAC obligations as set forth in Article VI of this Agreement; and disputes concerning the termination, extension or modification of this Agreement as set forth in Article XIII of this Agreement shall be considered a grievance and subject to resolution under the following procedures. The Steps listed below shall be followed in sequential order:

Step 1: The Employer or his representative shall meet with the representative of the Union and attempt to adjust the grievance between them on a job-level basis as promptly as possible, but in no event later than 15 working days after the grieving party knew or should have known of the grievance, whichever is later, except with respect to wage claims which shall be made as promptly as possible but in no event later than thirty calendar days after the grieving party knew or should have known of the grievance, which ever is later. If the parties at this step cannot resolve the grievance within the referenced fifteen or thirty day period, either party has a maximum of ten working days to appeal the grievance to Step 2 by giving written notice to the other party stating, at a minimum, the basic nature of the dispute and the time it arose (such submission may thereafter be subject to reasonable amendments in the event of an omission, mistake or new information). The above notwithstanding, no grievance shall be filed more than six months after it arose (the commencement and running of such period being defined in the same manner as under NLRB Section 10(b)), except grievances regarding wages owed for Tier violations that are uncovered through an audit, which must be filed no later than 30 days after the issuance of the audit.

Step 2: Upon receipt of the requisite written notification invoking Step 2, a representative of the Local Union Grievance Department and a representative of the Employer shall endeavor to meet within 10 days of the referral of the dispute to this Step 2 to arrive at a satisfactory settlement. If the parties fail to reach agreement, the party against which the grievance is brought shall have ten working days from the referral of the dispute to Step 2 to deny the grievance by giving written notice to the other party of the denial.

Step 3: Upon receipt of the requisite written denial concluding Step 2, the grieving party shall have 30 days to submit the matter to arbitration by providing written notice to the other party (and if brought against an Employer to the Association), stating its intent to arbitrate the matter. An arbitrator shall be selected from the following rotating panel (in the order in which they herein appear): Richard Adelman, Howard Edelman, Robert Herzog and Roger Maher. If an arbitrator due to serve is unable to provide at least three open dates within three months of the submission of the dispute to arbitration and the parties and arbitrator are unable to agree on a mutually acceptable date; the grieving party may elect to have the next arbitrator serve if he/she has more available dates in the three-month period following the submission. The parties and selected arbitrator shall follow the American Arbitration Association rules for voluntary resolution of labor cases, for all matters not specifically addressed herein.

The arbitrator shall fix a time and a place in New York, New York for a hearing upon reasonable notice to each party. The Arbitrator shall render a decision within thirty days from

the final submissions, which shall be binding upon both parties, but the Arbitrator shall have no power to render a decision which adds to, subtracts from or modifies this Agreement.

The parties to the Arbitration shall bear equally the expenses of the Arbitrator and, if applicable, the rental of the place of arbitration and transcription fee. All other expenses attendant to arbitration will be borne by the party incurring them, including the expense of any witnesses called by such party. If an employee is called by an Employer to appear at any arbitration proceeding under this Agreement, he shall be reimbursed by the Employer for any time lost at his regular straight time rate of pay. The preceding sentence shall not apply in the case of witnesses called by the Union.

No party shall be required to arbitrate more than one issue at a single hearing, except as otherwise provided in this Agreement.

In the event of the grievance of a wage claim, any award of back pay shall be limited to the unpaid portion of wages during the relevant contiguous six-month period. Notwithstanding the otherwise applicable exclusion from the grievance/arbitration process of issues related to fringe benefit contributions, dues and MTDC PAC obligations, any award of wages to an employee shall require payment to the appropriate entity of all Fringe Benefit Fund contributions, dues and MTDC PAC obligations owed for the same period on behalf of the employee.

Only the Union, the Association and the Employer may initiate, have access to, or be parties to grievance and arbitration under this Agreement.

Section 3. On the third violation and thereafter arising against any employer within a one month period alleging that the employer has failed to notify the Union of a job and failed to employ Demolition Workers referred from the Union, an additional amount equal to 20% of the amount owed shall be paid to the Union as liquidated damages

Section 4. Failure of the grieving party to timely file a grievance shall render the grievance null and void. Failure of either party to make appeals, or to submit responses to submissions, pursuant to the procedures specified in Steps 1 and 2 shall cause the grievance to be resolved on the basis of the opposing party's last submission.

Section 5. Any Award or other resolution of a grievance reached pursuant to this Grievance and Arbitration provision shall be final and binding on the parties. In the event an employer fails to comply with the Award within five working days of its issuance, the Union shall have the right to withdraw its labor from the non-complying Employer until the Employer complies with the Award.

## ARTICLE XII

Section 1.-
    a) It is further agreed by and between the parties hereto that if any Federal or State Court shall at any time decide that any clause or clauses of this Agreement is or are void or illegal, such decisions shall not invalidate the other portions of this Agreement, but such clause shall be

28

stricken out and the remaining portion of this Agreement shall be considered binding between the parties hereto.

b) Any provisions of the Agreement hereinabove mentioned which provide for Union security or employment in a manner and to an extent prohibited by any law or the determination of any Governmental Board or Agency, shall be and hereby are of no force or effect during the term of any such prohibition. It is understood and agreed, however, that if any of the provisions of the said Agreement which are hereby declared to be of no force or effect because of restrictions imposed by law is or are determined either by Act of Congress or other legislative enactment or by a decision of the Court of highest recourse to be legal or permissible, then any such provision of the said Agreement shall immediately become and remain effective during the remainder of the term of this Agreement. The Union reserves the right to re-negotiate any of the provisions of the Agreement which may be of no force or effect, provided, however, that such negotiation shall not suspend or otherwise affect the obligation of the parties under Article X during the term of this Agreement.

Section 2.-

The Association agrees that within forty-eight hours after the execution of this Agreement, it will submit to the Union a schedule setting forth in full each member of the Association, giving the name and address. When any member of the Association is doing business under a trade name, the name of the principal shall also be given. The Association further agrees that it will immediately notify the Union in writing of any change in its membership, setting forth the names and addresses of any new members of the Association, and setting forth the names and addresses of those members which may have dropped out or been suspended from the Association.

Section 3.-

The Association and the Union agree that their efforts will be employed in the public interest to increase production and reduce costs by maintaining maximum man rate output, and to use all machinery, tools, appliances, or methods which may be practical.

Section 4.-

The Union shall have the option to terminate this Agreement with the Interior Demolition Contractors Association should the Association merge, join, consolidate or combine with any other employer, group, organization or association.

Section 5.-

a) If, within the jurisdiction of this Agreement, the Union enters into any agreement with any employer that provides, contains or otherwise permits more favorable terms or conditions of employment to such employer in the performance of bargaining unit work than are provided for in this Agreement, then each Employer shall have the option within thirty (30) days of when the Employer first knew or should have known of such more favorable terms and conditions to cause such more favorable terms (including all related terms which are more favorable to the Union), to supercede the inconsistent terms and conditions of this Agreement effective the date notice of such election is provided to the Union.

b) If, within the jurisdiction of this Agreement, the Union allows any practice by any employer that provides or permits more favorable terms or conditions of employment to such employer in the performance of bargaining unit work than are provided for in this Agreement, and the Union fails to file a grievance or take appropriate action to bring about a complete cessation of such practice within ten (10) calendar days of its receipt of written notice thereof from the Association, then such more favorable terms and conditions shall be available to the members of the Association.

c) The preceding paragraphs a. and b. of this Section shall apply only to terms and conditions of employment provided in, or maintained under, an Independent or employer-specific collective bargaining agreement entered into by the Union.

Section 6.-

This Agreement shall be binding on the parties, regardless of any change of name by the Mason Tenders District Council of Greater New York or changes in the composition of its constituent local unions. This Agreement shall be enforceable by the Association, the Mason Tenders District Council of Greater New York, its successor, the Trust Funds set forth in Article VI of the Agreement, and any constituent local so authorized by the Mason Tenders' District Council of Greater New York or its successor.

Section 7.-

The Employers and the Union obligate themselves to live up to all the provisions of this Trade Agreement in good faith.

Section 8.-

The failure of either party to this Agreement to require strict performance of any of its rights under, or of any of the terms or conditions contained in, this Agreement shall not be deemed a waiver, modification or abandonment of its rights to insist upon strict performance of all the terms and conditions of this Agreement thereafter.

Section 9.-

a) Employers and their principals who have repeated "intentional incidents" of contractual non-compliance, as defined below, shall become bound to the MTDC Independent Interior Demolition Agreement (the "Independent Agreement") then in effect, to the full extent as if that Agreement were set forth in full herein (including the provisions regarding personal liability), for the periods defined below. Issues regarding contract formation and expiration shall continue to be governed by this Agreement.

b) For purpose of this section, an "intentional incident" shall mean either i) any intentional violation by an Employer of Article III, Section 2e)(i) regarding an employer's obligation to notify the Union of its jobs, or ii) the payment of any employee in a manner that does not result in the employee receiving a record of receipt of such payment or does not result in the payment appearing on the Employer's regular payroll records.

c) The following consequences shall follow from employer acknowledgements in writing of intentional incidents or an Arbitrator's determination that intentional incidents occurred:

    A. In the event an Employer acknowledges or is found to have three intentional incidents in any six month period, it shall be bound to the Independent Agreement for a period of thirty calendar days from the date of the Award or last acknowledgment.

    B. In the event an Employer acknowledges or is found to have four intentional incidents in any eighteen month period, it shall be bound to the Independent Agreement for a period of sixty calendar days from the date of the Award or last acknowledgement.

    C. In the event an Employer acknowledges or is found to have five intentional incidents during the effective period of this Agreement or any extension thereof, it shall be bound to the Independent Agreement from the date of the Award or last acknowledgement through the term of the Agreement, including any extension thereof.

d) If an Employer completes its first period of coverage under the Independent Agreement and sixty days elapse without an event occurring that is acknowledged or found to be an intentional incident, the Employer's previous intentional incidents shall not be counted in calculating its exposure to future coverage under the Independent Agreement. Otherwise, all intentional incidents, whether or not they have already served as the basis for a period of coverage under the Independent Agreement, as well as intentional incidents that occur during an Employer's coverage under the Independent Agreement, shall count towards future potential periods of an Employer's coverage under the Independent Agreement.

e) The Union may, notwithstanding the time-limits or other procedural limitations contained in the grievance/arbitration provision of this Agreement: i) give written timely notice under Article XI, Section 2, Step 3 to the Employer and the Association of its intent to hold grievances involving this Section 9 in abeyance pending the aggregation of other grievances involving this Section 9, the procedural limitations contained in the grievance/arbitration provision of this Agreement notwithstanding, and ii) arbitrate all matters regarding intentional incidents committed by the Employer in a single consolidated case.

f) Incidents which are remedied through the Union's withdrawal of labor under Article III, Section 3 above, shall not count as intentional incidents under this provision.

g) The phrase "the term of the Agreement, including any extension thereof" as used in this Section shall mean the term of the 2000-2004 collective bargaining agreement and this Agreement (including any extension thereof) inclusive.

Section 10.-

a) Employers and their principals hereby agree that in the event of their withdrawal, resignation, suspension or termination from membership in the Association, they shall during the remaining term of this Agreement, be bound by the terms of the MTDC Independent Interior Demolition Agreement then in effect, including the provisions regarding personal liability. Copies of the current MTDC Independent Interior Demolition Agreement have been provided to the Association, and future issuances of the Agreement shall be made available upon request.

b) In the event any Employer is found liable for violations of this Agreement arising from or relating in whole or part to the establishment or maintenance of an alter ego or work as a joint or single employer, the principals of the Employer shall be personally liable for all damages accruing from such violations.

c) It is understood that except as provided in this Article XII, Sections 9 and 10, Article VI, Section 21 c) and/or applicable law, representatives of the Employer shall not be personally liable for delinquencies arising from work performed under this 2004-2009 Agreement or thereafter, the provisions of any prior standard Independent Collective-Bargaining Agreement entered into by an Employer with the Union notwithstanding.

## ARTICLE XIII

Section 1.-

This Agreement shall become effective and binding upon the parties hereto on the 1st day of July 2004, and remain in effect through June 30, 2009, and shall renew from year to year thereafter unless either party hereto shall give written notice to the other of its desire to modify, amend, or terminate this Agreement on its expiration date. Such notice must be given in writing by certified mail, postage prepaid, sixty days, but not more than ninety days, before the anniversary date of this Agreement. In the event one of the parties to this Agreement gives written notice of its desire to modify or amend this Agreement pursuant to this Article, the conditions established by this Agreement shall continue in effect during negotiations for a new Agreement.

Agreed to effective June 30, 2004 by and between:

For the Interior Demolition Contractors Association:

By: _[signature]_    Dated _10/4/04_

For the Mason Tenders District Council of Greater New York:

By: _[signature]_    Dated: _10/22/04_
Robert Bonanza, Business Manager

33

# Interior Demolition Contractors Association Ratio Reporting Form

Employer: _____   Job Location: _____

Employer Representative's Name (Print): _____   Date: _____

Employer Representative Signature: _____

| NAME | U/C Apr. | A/B Apr. | BOOK or SOCIAL SECURITY # | NAME | U/C Apr. | A/B Apr. | BOOK or SOCIAL SECURITY # |
|---|---|---|---|---|---|---|---|
| 1. (FM) | E | A |  | 21. | E | A |  |
| 2. (SS) | U | A |  | 22. | E | B |  |
| 3. | E** | B |  | 23. | E | B |  |
| 4. | E | B |  | 24. | U | A |  |
| 5. | E** | B |  | 25. | Apr. | Apr. |  |
| 6. | E | B |  | 26. | U | B |  |
| 7. | E | B |  | 27. | E | B |  |
| 8. | E | A |  | 28. | E | A |  |
| 9. | E | B |  | 29. | E | B |  |
| 10. | Apr. | Apr. |  | 30. | Apr. | Apr. |  |
| 11. | U | A |  | 31. | E | B |  |
| 12. | E | B |  | 32. | U | A |  |
| 13. | E | B |  | 33. | U | B |  |
| 14. | E | A |  | 34. | E | B |  |
| 15. | E** | B |  | 35. | Apr. | Apr. |  |
| 16. | E | B |  | 36. | E | A |  |
| 17. | U | A |  | 37. | E | B |  |
| 18. | U | B |  | 38. | E | B |  |
| 19. | E | B |  | 39. | U | A |  |
| 20. | Apr. | Apr. |  | 40. | Apr. | Apr. |  |

\* If the job has more than 40 employees, please use a second copy of this form beginning at number 26.

\*\* Employer option for apprentice, but cannot take at third and fifth position.

A= Skilled Demolition Laborer;  B= General Demolition Worker

(In the event of lack of employer cooperation) – B.A'S SIGNATURE: _____

THIS FORM MUST BE PROVIDED TO THE UNION REPRESENTATIVE UPON DEMAND. THIS FORM MAY BE AMENDED FOR 48 HOURS FROM THE TIME IT IS FIRST PRESENTED.

<u>Schedule C</u>

In calculating the "full amount of fringe benefit, dues check off, and/or MTDC PAC contributions suggested by the reconciled reports" pursuant to Article X, Section 1a)(iii) of the Agreement, it is agreed that the following basic concepts will be followed.

1. The minimum amounts suggested to be due shall be the amounts reported on the remittance reports submitted by the Employer.

2. Any employee shown to have worked on a job under the shop steward or Tier A/Tier B reports shall also be assumed to have worked on the job, and shall be assumed to have worked the hours, if any, indicated on such forms.

3. To the extent the number of hours worked is not reported for certain employees, the average number of hours worked by other employees on the job shall be imputed.

4. To the extent available, Tier A /Tier B reports shall be utilized to determine the Tier A or Tier B status of employees.

5. In the event of inconsistencies between available reports, or other information gaps, reasonable assumptions and reconciliations will be made to reach best estimates of the amounts owed.

## Paymaster Side Letter (Schedule D)

The hereby acknowledge and agree that the following rules and restrictions are applicable to the job for the entire duration of the job, in addition to any other terms and conditions otherwise set forth in the Master Independent Collective Bargaining Agreement (the "CBA"):

    i.    The Employer warrants that it, along with the below referenced entity for which it is serving as a paymaster (collectively the "Companies") are and shall remain the general contractors on the site for the duration of the job, and are responsible for, and shall assure that all on site work within the scope of Article IV of the CBA is performed by MTDC-signatory contractors under the terms and conditions of the CBA and this letter of agreement.

    ii.    The first Mason Tender on that job site shall be a Shop Steward selected by the Union, the second Mason Tender on the job shall be a Foreman selected by the Employer, and commencing with the third Mason Tender on the job site, 100% of Mason Tenders shall be furnished and referred by the Union to the Employer from the roster of eligible laborers, without limitation to the applicable provisions of the CBA regarding the referral of apprentices. The Shop Steward shall be provided the first opportunity to work any overtime that is available.

    iii.    A Shop Steward shall be employed to tend the trades when work of any other kind is being performed at the site.

    iv.    The Employer acknowledges and agrees that the Companies are and shall be joint employers and one another's agents for all work performed at the site for the complete duration of the job. The Companies shall be jointly and severally liable for all violations of the CBA and this agreement and/or applicable law committed by either, whether acting independently or in concert, including but not limited to any action taken by either in violation of the provisions of the CBA prohibiting the subcontract of on site work to entities not bound to a collective bargaining agreement with the Union. In addition to any other responsibilities it may have, the Employer shall serve as a guarantor that the CBA and the terms and conditions of employment set forth herein are followed and complied with for the duration of the entity for which it serving as a paymaster's presence on the job, to the full extent as if the entity for which it is serving as a paymaster were bound in full to the CBA and this side-letter agreement, which guarantee shall apply and be binding irrespective of any change in relationship between the Companies, such as a termination of the Employer's status as paymaster prior to the completion of the job.

    v.    The Employer agrees that any terms in the CBA to the contrary notwithstanding, the Employer shall be required to pay weekly all fringe

benefit contributions, dues, and MTDC PAC deductions to the applicable entity. For among reasons, the Union shall have the right to withdraw labor and/or picket in the event of any delinquency on such payments. Workers affected by such stoppage of work shall be paid by the Employer for all lost time.

      vi.    In the event the Union reasonably concludes that any of the above referenced provisions or the other terms of the CBA are breached, in addition to any other remedies that may be available to the Union, upon 24-hours notice to the Employer, the Union may rescind its acquiescence to the paymaster relationship, and withdraw labor and/or picket the job in accordance with applicable law.